**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**

Richard A. Waite

   v.          Civil No. 22-cv-71-SE-AJ

Dana Hoyt, et al.

**REPORT & RECOMMENDATION**

  Before the court is the complaint (Doc. No. 1) filed by pro se plaintiff, Richard Waite, a prisoner at the Northern New Hampshire Correctional Facility in Berlin, New Hampshire ("NCF"). The complaint is before this Magistrate Judge for preliminary review under LR 4.3(d)(1) and 28 U.S.C. § 1915A(a).

**Preliminary Review Standard**

  The court may dismiss claims asserted in a prisoner's complaint if the court lacks subject matter jurisdiction, a defendant is immune from the relief sought, the complaint fails to state a claim, or the action is frivolous or malicious. See 28 U.S.C. § 1915A(b). In determining whether a pro se complaint states a claim, the court must construe the complaint liberally. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam). To determine whether to dismiss claims for failure to state a claim, the court takes as true the facts asserted in the complaint and inferences reasonably drawn from those facts, strips away the legal conclusions, and considers whether

plaintiff has stated a claim that is plausible on its face.
Hernandez-Cuevas v. Taylor, 723 F.3d 91, 102-03 (1st Cir. 2013)
(citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

**Background**

I.   Facts

Mr. Waite is incarcerated at the NCF.  He practices a
"nature based" religion, identifying himself as a "traditional
hereditary hedge witch," also known as a "green witch" or
"kitchen witch."  Doc. No. 1, at 10.  Mr. Waite's religion
requires him to use natural, neutral oils in rituals; to eat
only food that is "treated with reverence," meaning food without
"artificial ingredients," "artificial fertilizers," and
genetically modified organisms; and to avoid waste.  E.g., id.,
at 2, 9; Doc. No. 1-1, at 8.  As discussed in more detail below,
Mr. Waite alleges that the NCF limits his ability to practice
these aspects of his religion.  He also alleges that he has a
medical condition, lactose intolerance, and the NCF does not
provide him with appropriate medication for it, and that as a
result, he cannot obtain adequate nutrition.

II.  Natural and Neutral Oils

Mr. Waite alleges that NCF offers oils for purchase for
prisoners' religious use but none are natural and neutral.
Rather, the available oils are "synthetic" and therefore

unsuitable for Mr. Waite's religious use.  Doc. No. 1, at 3.
Without suitable oil, Mr. Waite cannot properly perform certain
religious rituals.

Mr. Waite made requests or grievances asking the NCF to
supply suitable oil, but the New Hampshire Department of
Corrections ("DOC") Religious Review Committee ("RRC")
considered and denied the request.  NCF Chaplain Dana Hoyt
offered Mr. Waite olive oil as a substitute, but Mr. Waite
asserts that olive oil is not neutral and it is inappropriate
for his religious practice "unless it grew naturally nearby."
Doc. No. 1-1, at 9.  Chaplain Hoyt also offered Mr. Waite a
"drop" of natural oil, but Mr. Waite alleges that it was an
insufficient amount for his religious practices.  Mr. Waite
alleges that there is at least one DOC-approved vendor that can
supply suitable oil.

Mr. Waite also alleges that Jewish and Muslim inmates are
permitted prayer or religious oil that is suitable for their use
(i.e., the synthetic oil).  He asserts that he should likewise
be permitted access to oil that is suitable for his religious
use.

III. <u>Diet & Wasteful Practices</u>

In addition to oil, Mr. Waite requested that the NCF
provide him with a special religious diet limited to food that

is "treated with reverence."  Mr. Waite offered to accept a
Kosher diet as a substitute, but NCF officials denied that
request.

Mr. Waite further alleges that his faith requires him to
avoid wasteful food practices.  Mr. Waite alleges that the NCF
does not provide him enough time to eat without wasting food.
Mr. Waite alleges that NCF provides him, on average, between 12
and 15 minutes to eat.  But Mr. Waite cannot eat that quickly
because he is lactose intolerant, and drinking more than a few
ounces of milk in under 15 minutes results in gastrointestinal
distress.

Mr. Waite noted in his complaint that the NCF cafeteria
does not give him the option of refusing milk when it is handed
to him at the prison cafeteria; he must take all items that are
on the tray he is handed.  As a result, Mr. Waite alleges that
he must choose between wastefully discarding food that he cannot
quickly eat, in violation of his religious practice, or
accepting the gastrointestinal consequences of rapid lactose
consumption.

IV.  <u>New Hampshire Statues and Policy and Procedure Directives</u>

In addition to the above allegations Mr. Waite asserts that
N.H. Rev. Stat. Ann. §§ ("RSA") 622:22 and 622:23, which relate
to religious freedom of New Hampshire state inmates, and DOC

4

Policy and Procedure Directive ("PPD") 2.34, which relates to the hiring of prison chaplains, violate the First Amendment. He alleges that these laws and policies generally favor Christians above non-Christians.

V.   Medical Allegations

Aside from his claims premised on his religious practice, Mr. Waite also alleges that the DOC (which includes the NCF) does not provide inmates with free lactase pills, which are necessary to allow him to consume lactose without gastrointestinal distress. Mr. Waite alleges that inmates may purchase lactase pills at the NCF canteen, but the price is excessive ($5.28 for 60 pills), and the prison only permits purchase of one bottle per week, which is not enough for Mr. Waite's needs. Mr. Waite alleges that these circumstances leave him unable to obtain sufficient nutrition. He alleges that the NCF provides alternative diets to inmates with allergies and other dietary restrictions, but not to lactose intolerant inmates. Mr. Waite also indicates that he intends to bring this claim on behalf of all similarly situated inmates.

VI.  Claims

Liberally construing Mr. Waite's complaint, the court finds that it asserts the following claims:

1.    Defendants failed to allow Mr. Waite to obtain natural and neutral oil for his religious practice, in violation of:

      a.    the First Amendment's Free Exercise Clause;

      b.    the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc ("RLUIPA"); and

      c.    the Fourteenth Amendment's Equal Protection Clause.

2.    RSA 622:22 and RSA 622:23 violate the First Amendment's Establishment Clause because they favor Christian inmates.

3.    PPD 2:34 violates the First Amendment because it favors hiring Christian chaplains at New Hampshire prisons.

4.    Defendants denied Mr. Waite a religiously required diet, namely, food that is "treated with reverence," meaning it contains no "artificial ingredients," no "artificial fertilizers," and no genetically modified organisms, in violation of:

      a.    the First Amendment's Free Exercise Clause;

      b.    RLUIPA; and

      c.    the Fourteenth Amendment's Equal Protection Clause.

5.    Defendants failed to provide Mr. Waite sufficient time to eat, forcing him to choose between wasteful practices, in contravention of his religious beliefs, and gastrointestinal distress, in violation of:

a.   The First Amendment's Free
     Exercise Clause;

b.   RLUIPA; and

c.   the Fourteenth Amendment's
     Equal Protection Clause.

6.   Defendants failed to provide Mr. Waite
     with lactase, which has forced him to
     choose between a nutritious diet or
     gastrointestinal distress, in violation
     of the Eighth Amendment.

Mr. Waite seeks money damages from the defendants and
declaratory and injunctive relief.  He names all the defendants
in their individual and official capacities.

## **Discussion**

I.   <u>Sovereign Immunity</u>

In his complaint, Mr. Waite asks, in part, for money
damages from the defendants in their individual and official
capacities, and from the state.  The Eleventh Amendment
generally precludes a plaintiff from suing the state, its
agencies, or state employees in their official capacities,
unless the state has waived its Eleventh Amendment immunity, or
a federal law provides the requisite waiver or abrogation of
that immunity.  See Town of Barnstable v. O'Connor, 786 F.3d
130, 138 (1st Cir. 2015); Davidson v. Howe, 749 F.3d 21, 27-28
(1st Cir. 2014).  Except to the extent Mr. Waite seeks
prospective injunctive relief, no waiver or abrogation of the

state's Eleventh Amendment immunity applies to any of Mr.
Waite's claims against the state or the defendants in their
official capacities.  See Will v. Mich. Dep't of State Police,
491 U.S. 58, 65-66 (1989) ("Congress, in passing §1983, had no
intention to disturb the States' Eleventh Amendment immunity"
(citation omitted)); Sossamon v. Texas, 563 U.S. 277, 293 (2011)
(holding that states do not waive sovereign immunity to suits
for damages under RLUIPA by accepting federal funds).
Accordingly, the District Judge should dismiss Mr. Waite's
claims to the extent he seeks money damages from the state or
from any state officials in their official capacities.

II.   RLUIPA claims against defendants for damages in their
      individual capacities.

      In his complaint, Mr. Waite also asks for damages under
RLUIPA from defendants in their individual capacities.  "Judges
in this jurisdiction have followed the well-reasoned opinions of
every federal appellate court to address the issue, in
concluding that RLUIPA does not authorize claims for damages
against prison officials in their individual capacities."
Martinko v. N.H. Dep't of Corrs. Comm'r, No. 22-cv-238-LM, 2023
WL 3325086, at *5, 2023 U.S. Dist. LEXIS 81571, at *13 (D.N.H.
Apr. 3, 2023) (collecting cases), R&R adopted, 2023 WL 3322982,
2023 U.S. Dist. LEXIS 80571 (May 9, 2023).  Accordingly, the

District Judge should dismiss Mr. Waite's RLUIPA claims to the extent he asks for damages from defendants in their individual capacities.  <u>See id.</u>

III. <u>Claim 1: Whether defendants violated (a) the First Amendment, (b) RLUIPA; or (c) the Fourteenth Amendment's Equal Protection Clause by failing to make available natural and neutral oil for Mr. Waite's religious practice.</u>

Mr. Waite's first claim relates to defendants' failure to provide him with suitable religious oils.  He asserts this claim under (a) the First Amendment's Free Exercise Clause, (b) RLUIPA, and (c) the Fourteenth Amendment's Equal Protection Clause.  Mr. Waite identifies several defendants to Claim 1, who appear to be the members of the RRC, which denied his request for religious oil: (1) Chaplain Hoyt; (2) New Hampshire State Prison ("NHSP") Chaplain/Deacon James Daly; (3) New Hampshire Correctional Facility for Women ("NHCFW") Chaplain "John/Jane Doe"; (4) NCF Warden Corey Riendeau; (5) NHSP Warden Michelle Edmark; (6) NHCFW Warden Nicole Plante[1]; (7) Chris Kench; (8) Nicholas Duffy; (9) NHSP "Administrator of Programs" John Doe; (10) DOC Commissioner Helen Hanks; (11) DOC Assistant Commissioner William T. Conway; and (12) Lynmarie Cusack.

---

[1] In his complaint, Mr. Waite identified this defendant as "NHSP-W" Warden "Plank, N."  Doc. No. 1, at 5.  The court infers from context that Mr. Waite intended to name NHCFW Warden Nicole Plante.

A.    First Amendment

The First Amendment's Free Exercise Clause "requires government respect for, and noninterference with, the religious beliefs and practices of our Nation's people." Cutter v. Wilkinson, 544 U.S. 709, 719 (2005).  This provision applies to the states under the Fourteenth Amendment. See Elk Grove Unified Sch. Dist. v. Newdow, 542 U.S. 1, 8 n.4 (2004). "[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system," including the right to the free exercise of religion. Pell v. Procunier, 417 U.S. 817, 822 (1974); see O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987).  The First Amendment protects an inmate's exercise of his sincerely held religious beliefs only to the extent that the exercise does not contravene prison regulations that are "reasonably related to legitimate penological interests." Beard v. Banks, 548 U.S. 521, 528 (2006) (quoting Turner v. Safley, 482 U.S. 78, 87 (1987)).

Mr. Waite alleges that conducting rituals with non-synthetic, neutral oil is part of his exercise of a sincerely held religious belief and that defendants have restricted his ability to practice his religion by limiting his procurement of

10

suitable oil.  The allegations in Claim 1(a) are sufficient to proceed beyond preliminary review.

     B.  <u>RLUIPA</u>

     To prevail on a claim under RLUIPA, an inmate must show "(1) that an institutionalized person's religious exercise has been burdened and (2) that the burden is substantial," and if he makes that showing, the burden shifts to the defendants to show "(3) that the burden furthers a compelling governmental interest and (4) that the burden is the least restrictive means of achieving that compelling interest." Spratt v. R.I. Dep't of Corr., 482 F.3d 33, 38 (1st Cir. 2007).  A burden is substantial if the challenged restriction puts "substantial pressure" on the inmate to modify his behavior and violate his beliefs.  See id.; McGee v. O'Brien, 160 F. Supp. 3d 407, 415 (D. Mass. 2016) ("On different occasions, the Supreme Court has stated that 'substantial pressure on an adherent to modify his behavior and to violate his beliefs' or a government policy that tends to 'coerce individuals into acting contrary to their religious beliefs' constitutes a substantial burden on one's religious exercise.").  "RLUIPA provides greater protection to inmates' free-exercise rights than does the First Amendment." Kupermann v. Wrenn, 645 F.3d 69, 79 (1st Cir. 2011).

As with Mr. Waite's First Amendment claim, Mr. Waite's RLUIPA claim regarding religious oil, Claim 1(b), is sufficient to proceed beyond preliminary review.

C.    Fourteenth Amendment's Equal Protection Clause

Mr. Waite references the Fourteenth Amendment's Equal Protection Clause in relation to his religious claims. Specifically, he asserts that defendants favor Christian inmates, and that Muslim and Jewish inmates are provided suitable oil, but he is not.

"The Fourteenth Amendment's Equal Protection Clause prohibits a state from treating similarly situated persons differently because of their classification in a particular group." Mulero-Carillo v. Román-Hernandez, 790 F.3d 99, 105-06 (1st Cir. 2015). To establish a claim under the Equal Protection Clause, the plaintiff must show that defendants selectively treated him compared to other similarly-situated individuals and that the selective treatment was based on impermissible considerations, such as race, religion, punishment for the exercise of constitutional rights, or malicious or bad faith intent to injure. Latimore v. Trotman, 651 F. Supp. 3d 366, 374-75 (D. Mass. 2023).

In his complaint, Mr. Waite did not allege facts indicating that he was treated differently than any similarly situated

prisoner.  He suggests that the NCF treats him differently than
Jewish and Muslim inmates because the NCF allows those inmates
to possess and procure prayer oil.  Mr. Waite, however, alleged
that he has access to the same oil as Jewish and Muslim inmates,
but that his religion requires he use "natural and neutral" oil,
which Judaism and Islam do not require.  Mr. Waite does not
allege that the NCF permits other similarly situated inmates
(i.e., other prisoners who, among other similarities, practice
his religion) to obtain natural and neutral oil, or that any
prison official intended to discriminate against him because of
his religion, which is a necessary element of an equal
protection claim.  See Patterson v. Cal. Dep't of Corr. &
Rehab., No. 22-16512, U.S. App. LEXIS 20174, at *2, 2023 WL
4992823, at *1 (7th Cir. Aug. 4, 2023) (affirming dismissal of
equal protection claim where "[plaintiff] failed to allege facts
sufficient to show that any defendant intentionally
discriminated against him on the basis of his religion.").  For
these reasons, the District Judge should dismiss Claim 1(c).

IV.  Claim 2: Whether RSA 622:22 and RSA 622:23 violate the
     First Amendment because they generally favor Christian
     inmates.

     In Claim 2, Mr. Waite alleges that RSA 622:22 and 23
violate the First Amendment because they generally favor
Christian inmates over inmates of other religions.  Mr. Waite

13

identifies the State of New Hampshire as the defendant as to
this claim.  <u>See</u> Doc. No. 1, at 7.

A plaintiff must have constitutional standing (also known
as Article III standing) to invoke federal jurisdiction.  <u>See,
e.g.,</u> <u>Efreom v. McKee</u>, 46 F.4th 9, 21 (1st Cir. 2022).  This
means that the plaintiff must show that he suffered an "injury
in fact" that is both fairly traceable to the challenged conduct
of the defendants and likely to be redressed by a favorable
judicial decision.  <u>See</u> <u>Lujan v. Defenders of Wildlife</u>, 504 U.S.
555, 560-61 (1992).  "[A] grievance that amounts to nothing more
than an abstract and generalized harm to a citizen's interest in
the proper application of the law does not count as an 'injury
in fact.'"  <u>Carney v. Adams</u>, 592 U.S. ---, 141 S. Ct. 493, 498
(2020); <u>Valley Forge Christian Coll. v. Ams. United for
Separation of Church & State, Inc.</u>, 454 U.S. 464, 485-86 (1982).

The statutes that Mr. Waite seeks to invalidate under the
First Amendment state as follows:

> The rules and regulations established for the
> government of any prison, county correctional
> facility, or public charitable or reformatory
> institution shall provide for suitable
> religious instruction and ministration to the
> inmates.

RSA 622:22.  And:

> The inmates shall have freedom of religious
> belief and freedom to worship God according to
> the dictates of their consciences, but this

>           shall not permit anything inconsistent with
>           proper discipline and management or any
>           expense beyond that made under RSA 622:22.

RSA 622:23. Generally, these statutes prohibit "prison officials from using state funds to support any particular religion." Farrow v. Stanley, No. Civ.02-567-PB, 2005 WL 2671541, at *2, 2005 U.S. Dist. LEXIS 24374, at *6 (D.N.H. Oct. 20, 2005).

In his complaint, Mr. Waite contends that RSA 622:23's reference to a singular "God" – with a capital 'G' – reveals that the state has a general preference for Christian inmates. But even accepting that premise for purposes of argument, Mr. Waite does not explain how it relates to any injury he alleges he has suffered in this case. In other words, there are no facts indicating that RSA 622:22 or RSA 622:23's reference to a singular "God" played a role in the alleged burdens on Mr. Waite's religious practice. Consequently, Mr. Waite has not shown that the remedy he seeks as to Claim 2 – declaring these statutes unconstitutional and enjoining their enforcement – would redress any of the injuries he alleges.

At best, then, Mr. Waite asks the court to issue an advisory opinion about the constitutionality of those statutes based on his concern that their texts demonstrate a generalized legislative bias in favor of Christian inmates. Article III of

the Constitution prohibits this court from doing so.  See Valley
Forge, 454 U.S. at 485-86 (holding that plaintiffs lacked
standing to bring First Amendment Establishment Clause claim to
invalidate property transfer where they suffered no injury "as a
consequence of the alleged constitutional error, other than the
psychological consequence presumably produced by observation of
conduct with which one disagrees").  For that reason, the
District Judge should dismiss Claim 2 without prejudice.

V.   Claim 3: Whether PPD 2.34 violates the First Amendment
     because it favors the selection of Christian chaplains.

     Similarly, in Claim 3, Mr. Waite alleges that PPD 2.34,
which relates to the procedures that the DOC uses in finding
chaplains when a vacancy exists, favors the hiring of Christian
chaplains.  Mr. Waite appears to bring this claim against the
State of New Hampshire, although it is unclear from the
complaint.  Like Claim 2, this claim is nonjusticiable because
Mr. Waite did not allege how he has been injured by any
defendant in applying PPD 2.34, or how invalidating PPD 2.34
would redress any of the injuries he has alleged.[2]  The District
Judge, therefore, should dismiss Claim 3 without prejudice.

---

[2] In addition, it is unclear whether PPD 2.34 remains in
effect in light of recent updates to DOC's policies.

VI.   <u>Claim 4: Whether defendants violated (a) the First
      Amendment's Free Exercise Clause; (b) RLUIPA; or (c) the
      Fourteenth Amendment's Equal Protection Clause by denying
      Mr. Waite a diet that is "treated with reverence."</u>

In Claim 4, Mr. Waite alleges that defendants violated (a)
the First Amendment's Free Exercise Clause, (b) RLUIPA, and (c)
the Fourteenth Amendment's Equal Protection Clause by denying
him a religiously required diet.  Mr. Waite has alleged that his
sincerely held religious beliefs require him to eat a diet
containing only food that is "treated with reverence," which the
defendants denied him.  The intended defendants to this claim
appear to be Commissioner Hanks and Warden Riendeau.  <u>See</u> Doc.
No. 1, at 9-10.  Considering the same standard discussed as to
Claims 1(a) and (b), the allegations as to Claims 4(a) and (b)
are sufficient to proceed beyond preliminary review.

However, to the extent Mr. Waite sought to bring a claim
under the Fourteenth Amendment's Equal Protection Clause based
on the failure to provide him a religious meal upon his request,
Mr. Waite has not alleged differential treatment.  For example,
Mr. Waite did not allege any facts indicating that defendants
treated his request for a religious diet differently than they
treat requests made by other prisoners similarly situated in all
relevant respects; another similarly situated non-Jewish
prisoner was provided with a Kosher diet upon request; or that
any defendant acted with regard to his meals with the intent to

discriminate against him based on his religion.  The District
Judge, therefore, should dismiss Claim 4(c).

VII. <u>Claim 5: Whether defendants violated (a) the First
     Amendment's Free Exercise Clause; (b) RLUIPA; or (c) the
     Fourteenth Amendment by failing to provide Mr. Waite
     sufficient time to eat, forcing him to choose between
     gastrointestinal distress or violating his religious
     beliefs.</u>

In Claim 5, Mr. Waite alleges that he is forced to choose
between quickly consuming milk and other dairy products, which
causes him significant gastrointestinal distress, or wastefully
discarding them, which violates his religious beliefs.  The
defendants as to this claim are Commissioner Hanks and Warden
Riendeau.  Doc. No. 1, at 14.

Liberally construing Mr. Waite's complaint to plausibly
allege that the NCF has burdened his religious practice by
placing him in a position in which he cannot avoid wasting food,
in violation of his religious beliefs, Claims 5(a) and (b) are
sufficient to proceed beyond preliminary review.  See Blair v.
Raemisch, 804 Fed. Appx. 909, 918-19 (10th Cir. 2020) (finding
that Buddhist inmate who was forced to choose between forgoing a
religious diet or frequent illness stated a claim for violation
of the First Amendment and RLUIPA).  However, to the extent Mr.
Waite sought to allege a claim under the Fourteenth Amendment's
Equal Protection Clause, it should be dismissed.  Mr. Waite

18

again fails to allege any differential treatment or discriminatory intent.  See id. at 920.  For example, Mr. Waite does not allege that the NCF provides him less time to eat than other similarly situated inmates, that the defendants denied him a lactose-free diet that is made available to similarly situated inmates based on Mr. Waite's membership in any protected class, or that he was provided with insufficient time to eat with a purpose to discriminate against him based on his religion.  For those reasons, the District Judge should dismiss Claim 5(c).

VIII.    Claim 6: Whether defendants violated the Eighth Amendment by failing to provide Mr. Waite lactase.

In his final claim, Mr. Waite alleges that the NCF does not provide him with adequate nutrition because he is lactose intolerant and he cannot obtain enough lactase pills to adequately accommodate that problem, through either the NCF's medical department or commissary.  The defendants to this claim are Commissioner Hanks and Warden Riendeau.  Doc. No. 1, at 15.

Under the Eighth Amendment, state prisoners must be provided with safe and nutritionally adequate food.  See, e.g., Yahtues v. Dionne, No. 16-cv-174-SM, 2020 WL 1492877, at *14, 2020 U.S. Dist. LEXIS 53254, at *38-*39 (D.N.H. Mar. 27, 2020)

(citing Brown v. Plata, 563 U.S. 493, 510 (2020), and Phelps v. Kapnolas, 308 F.3d 180, 187 (2d Cir. 2002)).[3]

Mr. Waite has alleged minimally sufficient facts for Claim 6 to proceed beyond preliminary review. Construing Mr. Waite's complaint liberally, he has alleged that he has been refused the means to obtain his nutritional needs without consuming items that contain lactose. As noted above, construing Mr. Waite's complaint liberally, he alleges that the NCF does not offer a lactose-free diet and does not provide him with sufficient access to lactase through the commissary to meet his needs. At this stage, that is enough to proceed beyond preliminary review. See Davis v. Missouri, 389 Fed. Appx. 579, 579-80 (8th Cir. 2010) (reversing preservice dismissal of claim that inmate was provided with inadequate nutrition).

## IX. Class Claim

Mr. Waite indicated that he plans or intends to bring Claim 6, regarding availability of lactase, on behalf of all similarly situated inmates. Mr. Waite, however, cannot represent a class of plaintiffs pro se. See 28 U.S.C. § 1654 ("In all courts of the United States, the parties may plead and conduct their own

---

[3] Although Mr. Waite did not expressly identify the Eighth Amendment as the basis of this claim, a convicted prisoner's right to adequate nutrition, which Mr. Waite does reference, arises under the Eighth Amendment.

cases personally or by counsel."); Snyder v. Contracted Med. for the DOC, No. CV 2O-10226-RGS, 2020 WL 4431749, at *1, 2020 U.S. Dist. LEXIS 136237, at *3-*4 (D. Mass. July 31, 2020) (citation omitted); see also LR 83.6(b) ("A pro se party may not authorize another person who is not a member of the bar of this court to appear on his or her behalf.").  To the extent Mr. Waite seeks to bring a claim on behalf of others, the District Judge should dismiss the claim without prejudice to Mr. Waite's ability to refile the claim through counsel.

## Conclusion

For the foregoing reasons, the District Judge should: (1) dismiss Claims 1(c), 2-3, 4(c), and 5(c); (2) dismiss the State of New Hampshire as a party defendant; (3) dismiss any claim for damages asserted against the state or against any defendant in his or her official capacity; and (4) dismiss any individual capacity damages claim brought under RLUIPA.  Concurrent with this R&R, the court issues an order directing service of Claims 1(a)-(b), 4(a)-(b), 5(a)-(b), and 6 on the defendants identified therein.

Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice.  See Fed. R. Civ. P. 72(b)(2).  The fourteen-day period may be extended upon motion.  Failure to file objections within the specified

time waives the right to appeal the district court's order.  See
Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir.
2016).

                              Andrea K. Johnstone
                              United States Magistrate Judge

January 5, 2024

cc:  Richard A. Waite, pro se