## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

Richard A. Waite

      v.

Chaplain D. Hoyt, et al.

Civil No. 22-cv-071-SE-AJ
Opinion No. 2024 DNH 085

# O R D E R

New Hampshire Department of Corrections ("NHDOC") prisoner Richard A. Waite filed this action against the Northern New Hampshire Correctional Facility ("NCF") Warden Corey Riendeau, the NHDOC Commissioner Helen Hanks, the NCF Chaplain Dana Hoyt, and other members of the NHDOC Religious Review Committee ("RRC"). Following this court's preliminary review of Waite's Complaint (doc. no. 1), some of Waite's claims were dismissed. See Sept. 3, 2024 Order (doc. no. 29) (approving Jan. 5, 2024 R&R (doc. no. 8)). Waite's surviving claims include those identified in the January 5, 2024 R&R and a July 23, 2024 Superseding Endorsed Order as Claims 4(a)-(b) and 7(a)-(c), asserting violations of the Religious Land Use and Institutionalized Persons Act ("RLUIPA") and the First Amendment's Free Exercise and Establishment Clauses, relating to his practice of Witchcraft.[1] Waite filed two overlapping motions for a preliminary injunction (doc. nos. 7, 16) based on Claims 4(a)-(b) and 7(a)-(c), which are presently before the court. Those motions seek two forms of preliminary injunctive relief: (1) an order directing defendants to recognize Witchcraft as a distinct religion that NHDOC should not lump into the "Pagan" group of faiths, and (2) an order directing defendants to provide Waite with a diet that meets his religious requirements. Defendants object. See doc. nos. 14, 39.

---

[1] In this order and the record, Waite's religion is sometimes called "Wicca" and sometimes called "Witchcraft." He prefers the term "Witchcraft."

**Preliminary Injunction Standard**

A plaintiff seeking a preliminary injunction must establish that "'he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" Glossip v. Gross, 576 U.S. 863, 876 (2015) (citation omitted). The burden of proof is on the movant. Esso Std. Oil Co. v. Monroig-Zayas, 445 F.3d 13, 18 (1st Cir. 2006). Courts "must give substantial weight to any adverse impact on public safety or the operation of the criminal justice system" in considering whether to grant requests for preliminary injunctions in prison-conditions cases. Starbucks Corp. v. McKinney, 144 S. Ct. 1570, 1577 (2024) (citing 18 U.S.C. § 3626(a)(1)-(2)). The court may rule on a motion for a preliminary injunction without a hearing where, as here, it has before it "adequate documentary evidence upon which to base an informed, albeit preliminary conclusion," and the parties have been afforded "a fair opportunity to present relevant facts and arguments to the court, and to counter the opponent's submissions." Campbell Soup Co. v. Giles, 47 F.3d 467, 470-71 (1st Cir. 1995) (internal quotation marks and citation omitted).

**Background**

The NHDOC recognizes more than twenty separate religions or groups of religions practiced by NHDOC prisoners. See doc. no. 14-3, at 2-3. Each prisoner is permitted to declare a preference for only one recognized religion at a time.

Waite has declared Witchcraft to be his religious preference. His religious preference is recorded as "Wicca" in the NHDOC's system of prison records known as "CORIS," but it is treated by the NHDOC as part of the "Pagan/NeoPagan" ("Pagan") religious "umbrella" group for the purpose of NHDOC religious programming. The Pagan group is listed, but neither Wicca

nor Witchcraft is separately listed as one of the "recognized" religions in the official list maintained by the NHDOC chaplains. See id.;  see also Nov. 10, 2021 Resp. of Chap. D. Hoyt to Nov. 3, 2021 Inmate Request Slip ("IRS") (doc. no. 11-1, at 56).

The NHDOC Policy and Procedure Directive ("PPD") 672, regarding religious programming, allows the general prison population to attend regularly scheduled services coordinated by the chaplain or an approved religious volunteer.  PPD 672(IV)(A)(3) (doc. no. 14-2). When NHDOC staff or outside volunteers are unavailable, prisoners who are declared members of particular religious groups may meet for congregate services, led by approved co-religionist prisoners. See doc. no. 11-1, at 54-55; see also PPD 672(IV)(A)(3).

PPD 672 allows members of recognized religions to celebrate one feast per year that is open only to prisoners who have declared that religion as their preference. PPD 672(IV)(A)(9). Members of a recognized religion can choose to receive the religious diet approved for their religion, and they can possess the religious property, books, and apparel that the NHDOC has approved for their religion. PPD 672(V)(F).   Chaplain Hoyt has stated that prisoners who declare Wicca as their preference can attend the annual Pagan feast, and Waite's declaration of Witchcraft permits the Chaplain to allow him to receive the religious diets approved for the Pagan religious group. See doc. no. 11-1, at 53, 58.

Prisoners seeking to add new faiths to the list of recognized religions, or new religious practices and property to the lists approved for their religion, may submit a proposal to the RRC for that purpose. PPD 672(V)(K). Waite submitted a proposal to the RRC in late November 2021, seeking to have his religion removed from the larger "Pagan" group, and asking for separate, stand-alone recognition of Witchcraft. See doc. no. 11-1, at 4. The RRC denied Waite's proposal in February 2022. Id. Chaplain Hoyt explained, on behalf of the RRC, that the "Pagan

3

group at NCF is currently supported by a Wiccan priestess, who has also declared that Wicca definitely falls under the Pagan umbrella." Id.

Waite grieved the denial of his Witchcraft recognition proposal to the NCF Warden and the NHDOC Commissioner. See doc. no. 11-1, at 1-3. Waite stated in his grievances and in his underlying RRC proposal that all Witches are Pagans, but not all Pagans are Witches; that the religious apparel and property needs for Witches and other Pagans are not identical; that the prisoner-led Pagan services at NCF did not include the same rites and rituals that his religious practice requires; and that the Pagan services at NCF occur less often than his religion requires. Waites' grievances were denied. See doc. no. 11-1, at 1; doc. no. 19-1, at 5.

Waite filed this lawsuit thereafter. He has requested preliminary injunctions to compel the NHDOC to recognize Witchcraft as a separate religion, and to obtain a religious diet. Waite bases those requests on his RLUIPA, Free Exercise Clause, and Establishment Clause claims which allege that the failure to recognize Witchcraft separately denies his religion the "protections" available to recognized religions, placing it at a relative disadvantage. He also seeks preliminary injunctive relief on his religious diet claims, asserting violations of RLUIPA and the Free Exercise Clause. Defendants have objected to both of Waite's requests for preliminary injunctions.  See doc. nos. 14, 39.

**Discussion**

I.    Recognition of Witchcraft

    A.    RLUIPA and Free Exercise Clause Claims

RLUIPA provides that "[no] government shall impose a substantial burden on the religious exercise of a [prisoner] . . . even if the burden results from a rule of general applicability," unless the government demonstrates that the burden is "in furtherance of a

4

compelling governmental interest" and is "the least restrictive means of furthering that . . . interest." 42 U.S.C. § 2000cc-1(a). To obtain relief on his RLUIPA claims, Waite must show that the NHDOC policy or practice of considering Witchcraft to be part of the Pagan religious group has substantially burdened his religious practice. If Waite succeeds, the government may avoid liability by showing that the policy imposing the burden furthers a compelling governmental interest, and that the policy is the least restrictive means of achieving that interest. Ramirez v. Collier, 595 U.S. 411, 425 (2022).

Waite's pleadings assert that the NHDOC's failure to recognize Witchcraft as a separate religion has denied him the "protections" available to separately recognized religions and has assigned a "Pagan" label to his religion that some people would consider to be insulting. Although he has not specified precisely what protections are denied to his religion, Waite has averred that NHDOC's failure to recognize Witchcraft as a separate religion has burdened his ability to obtain a religious diet, as well as his ability to attend religious services that satisfy the frequency and ritual requirements of his religion. In particular, he stated that his religion requires weekly, occasional, and holy day observances that are not currently offered (Esbat services at least once and up to five times per lunar month, and Sabbats six or eight times per solar year); the differences between his Witchcraft ritual requirements and the type of rituals in the prisoner-led Pagan services at NCF; the absence of any religious diet offered to the Pagan group consistent with his religious dietary needs for food treated with reverence; and the longstanding recognition of Wicca or Witchcraft by other institutions including the Federal Bureau of Prisons. See generally RRC Proposal, Nov. 24, 2021, doc. no. 11-1 at 5; see also doc. no. 11-1, at 56; doc. no. 20, at 6. He has represented, without contradiction, that the Wiccan services officiated by a volunteer Wiccan priestess occur three to four times per year, and that the more frequent

Pagan services led by prisoners at NCF do not include the same rites or rituals his religion requires. See, e.g., [Jan.] 14, 2024 IRS to Chap. Hoyt (doc. no. 17-1, at 3) ("Hoyt 2024 IRS"); "Pagan Group IFG" announcements (doc. no. 17-1, at 1, 2).

A substantial burden for the purpose of RLUIPA exists "[w]here the state conditions receipt of an important benefit upon conduct proscribed by a religious faith, or where it denies such a benefit because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs." Perrier-Bilbo v. United States, 954 F.3d 413, 431 (1st Cir. 2020) (citation omitted). It also exists where a state policy "coerces the inmate to modify his religious behavior significantly or to violate his religious beliefs," Farrow v. Stanley, No. 02-567-PB, 2005 DNH 146, 2005 WL 2671541, at *4, 2005 U.S. Dist. LEXIS 24374, at *14 (D.N.H. Oct. 20, 2005). A "[s]ubstantial burden requires something more than an incidental effect on religious exercise" or inconvenience. Signs for Jesus v. Town of Pembroke, 977 F.3d 93, 111 (1st Cir. 2020) (internal quotation marks and citation omitted).

Whether the government action or regulation imposes a substantial burden on an adherent's exercise requires a case-by-case, fact-specific inquiry. Adkins v. Kaspar, 393 F.3d 559 (5th Cir. 2004); Cryer v. Clarke, No. 09-10238, 2012 WL 6800791, at *9, 2012 U.S. Dist. LEXIS 183568, at *9 (D. Mass. Sept. 7, 2012) (where prison had not completely banned possession of Native American artifacts, and prisoner failed to explain how using presently available artifacts forced him to modify his religious beliefs, prisoner did not show existence of substantial burden). A prison's failure to offer regular congregate worship services at the frequency required by a prisoner's religious practices can, but does not necessarily, amount to a substantial burden.  Compare Crawford v. Clarke, 578 F.3d 39, 44 (1st Cir. 2009) (plaintiffs had

shown substantial burden on their religious practice of congregate worship because they were
prohibited from participating in any weekly, group services), with Brooks v. Bishop, Civ. Action
No. PWG-17-3063, 2019 WL 1317227, at *12, 2019 U.S. Dist. LEXIS 47695, at *35-36 (D. Md.
Mar. 21, 2019) (prison's denial of congregate daily prayer did not substantially burden prisoner's
religious practice where daily group services were preferred but not mandated, and prisoner had
not been prevented from praying daily or attending weekly services).

The evidence in the record shows a likelihood that Waite's inability to access his
religious diet and as many Sabbat or Esbat services as his religion requires places a burden on his
religious practice. But Waite must also show that the state action at issue—the failure to
recognize Witchcraft separately from the Pagan group—is causing those burdens; he must show
a likelihood of prevailing on the question of whether the challenged policy is itself a proximate
cause of the burdens at issue. Cf. Bader v. Wrenn, 675 F.3d 95, 99 (1st Cir. 2012) (no RLUIPA
violation shown as to transfer of prisoner that reduced his access to group worship and
counseling, where those religious "disadvantages" depended proximately on the lack of religious
volunteers and their decisions and actions not attributable to the prisoner's transfer, standing
alone).

The evidence linking the number and type of religious services available to Waite and the
NHDOC's failure to recognize Witchcraft as a distinct religion is weak. The terms of PPD 672,
concerning NHDOC religious programming, see doc. no. 14-2, provide limited support. PPD
672(IV)(A)(2) , in pertinent part, states as follows:

> Once recognized by the NHDOC, the religious group will be allowed to meet
> together at least once a month to pursue congregate practice/worship, subject to
> the restrictions of their custody level, security concerns and the availability of
> NHDOC staff and volunteers to be present during the religious meeting.

PPD 672(IV)(A)(2) (doc. no. 14-2). In other words, even if NHDOC separately recognized Witchcraft, Waite could not count on having access to the type of congregate services he requires because the frequency of those services depends on the availability of volunteers and the absence of security concerns.

The evidence before this court undermines any causal connection between NHDOC's refusal to recognize Witchcraft and any burden on Waite's access to sufficient, appropriate congregate services. A witch already officiates at Sabbats at NCF, though not as often as Waite contends his religion requires. See doc. no. 11-1, at 54. There is no evidence suggesting that she would come more frequently if the congregation consisted only of those prisoners declaring their religion as Witchcraft, and not Pagan. Likewise, Waite offers no evidence suggesting that any outside volunteer might officiate more frequently at NCF if Witchcraft were separately recognized.

PPD 672 further provides that the NHDOC allows prisoners to become facilitators of religious services if outside volunteers are not available. Prisoners lead services for other prisoners identified as "Pagan" in the prison's information system. There is no evidence suggesting that any prisoners at NCF would lead Witchcraft-compliant rituals if Witchcraft were separately recognized, or that they are presently prevented from doing so. Accordingly, upon the evidence currently available to the court, Waite has not demonstrated a likelihood of success on the merits. He has presented no evidence capable of establishing that the alleged burden on his access to congregate services is caused by NHDOP's failure to recognize Witchcraft as a separate religion and not by the limited availability and interest of volunteers.

Waite further claims that official recognition of Witchcraft violates his rights under RLUIPA because such recognition is a condition precedent to his ability to obtain a religious

diet. Waite's argument in that regard lacks any evidentiary support. None of the prison officials who denied Waite's requests and grievances regarding his religious diet cited as a reason the lack of separate recognition of Witchcraft. Moreover, there is some evidence that separate recognition of Witchcraft did not affect Waite's dietary request. When Waite requested a religious diet, the Chaplain advised him to seek the approval of the RRC to add a new religious diet to those offered to the Pagan group.

Waite has not yet shown a substantial likelihood of prevailing on his RLUIPA claim challenging the absence of separate recognition of Witchcraft. As RLUIPA is more protective of religious rights than is the First Amendment Free Exercise Clause, see Kuperman v. Wrenn, 645 F.3d 69, 79 (1st Cir. 2011), this court need not consider whether he has shown a likelihood of success on his parallel Free Exercise claim.

B.      Establishment Clause

In the claim this court has identified as Claim 7(c), Waite alleges that the failure to recognize Witchcraft separately violates his rights under the Establishment Clause. Construed liberally, Waite has asserted that there are advantages afforded to separately recognized religions and that the Pagan label is insulting.

The Establishment Clause of the First Amendment prohibits any "law respecting an establishment of religion." U.S. Const. Amend. I. To determine whether government action violates the Establishment Clause, the court must "refer[] to historical practices and understandings." Kennedy v. Bremerton Sch. Dist., 597 U.S. 507, 535 (2022). The record before this court includes Waite's representations and excerpts from publications he considers to be reliable. They indicate that government officials at the time of the Framers frequently grouped Witchcraft together with other non-Christian or non-monotheistic religious traditions, labelling

the group as Pagan and not affording them the same advantages as afforded some Christians. Waite also points to more recent examples of institutions, like the Federal Bureau of Prisons and state corrections departments, recognizing Wicca as a separate religion when administering institutional accommodations of religious practices. These historical practices and understandings suggest that Witches might find the Pagan classification offensive. But, that is not the end of the inquiry.

"[C]onsistent with a historically sensitive understanding of the Establishment Clause," the government may not "make a religious observance compulsory"; "coerce anyone to attend church"; or "force citizens to engage in formal religious exercise." Id. at 537 (citations and quotation marks omitted). No such compulsion or coercion is evident here. PPD 672(V)(G) states that prisoners who declare a religion are not compelled to attend the services of their declared religion. Waite has been allowed to self-identify as a Witch as long as he has been incarcerated. His CORIS entry for his religion stands as "Wicca." The evidence does not show the existence of any compulsory observances, forced beliefs, or coerced exercises.

More than fifty years ago, the Supreme Court observed that the federal constitution does not require identical facilities or personnel for every religious sect or group within a prison. Cruz v. Beto, 405 U.S. 319, 322 n.2 (1972). A quarter of a century later, the Court emphasized that the appropriate inquiry under the Establishment Clause is whether the subject policy or statute "confers [any] privileged status on any particular religious sect, and singles out [any] bona fide faith for disadvantageous treatment." Cutter v. Wilkinson, 544 U.S. 709, 724 (2005).

The evidence before this court does not disclose any advantage to separate recognition of a religion rather than recognition under a larger umbrella. Waite is identified as a member of the Pagan group in some contexts, but is also able to identify himself in CORIS as Wicca, which

distinguishes his practices from other Pagan faiths. His religious group is served by a co-religionist officiant volunteer. And, if the facilities and services available at NCF are insufficient, he can, like a member of any other formally recognized religion, submit proposals to the RCC and requests to the Chaplain. If he is still dissatisfied he can submit grievances to the highest echelon of prison officials, seeking changes to the religious property list, a new religious diet, and new practices associated with his own religious beliefs. The failure to officially recognize Witchcraft does not appear to alter what he can ask for, or what he might receive. Upon this record, Waite has not demonstrated a likelihood of prevailing on the merits of an Establishment Clause claim. Because likelihood of success is the sine qua non of the court's test for granting or denying motions for a preliminary injunction, see Arborjet, Inc. v. Rainbow Treecare Sci. Advancements, Inc., 794 F.3d 168, 173 (1st Cir. 2016), this court denies Waite's motions without examining the remaining factors.

II.     Religious Diet – Likelihood of Success & Failure to Exhaust

Waite's motions for a preliminary injunction also request a court-ordered religious diet that treats his food with "reverence" by containing no artificial ingredients, no artificial fertilizers, and no genetically modified organisms. Defendants object on the basis that Waite failed to exhaust all of the administrative remedies available to him with respect to his religious diet claims, as required by the Prison Litigation Reform Act ("PLRA") 42 U.S.C. § 1997e(a). Defendants contend that Waite's failure to exhaust precludes a finding that he is likely to succeed on the merits of his claims underlying that requested relief.

The PLRA provides, in pertinent part, that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); see also

Woodford v. Ngo, 548 U.S. 81, 85 (2006). The PLRA's exhaustion requirement applies to

RLUIPA claims as well as claims of constitutional violations arising under 42 U.S.C. § 1983.

See Cutter, 544 U.S. at 723 n.12; Stile v. Strafford Cty. Dep't of Corr., No. 15-cv-494-SM, 2019

DNH 161, 2019 WL 4600380, at *6, 2019 U.S. Dist. LEXIS 161676, at *14 (D.N.H. Sept. 20,

2019). The PLRA requires proper exhaustion, and "it is the prison's requirements, and not the

PLRA, that define the boundaries of proper exhaustion." Jones v. Bock, 549 U.S. 199, 218

(2007). Thus, to satisfy the PLRA, prisoners must use all of the available steps of the prison's

administrative remedy process, in conformity with the prison's deadlines and other critical

procedural rules.  Woodford, 548 U.S. at 90-91. Claims for which a plaintiff has not exhausted

his available administrative remedies prior to filing suit are subject to dismissal. Medina-Claudio

v. Rodríguez-Mateo, 292 F.3d 31, 36 (1st Cir. 2002).

There is one exception to the PLRA exhaustion rule: administrative remedies must, in

fact, be "available" to the prisoner. Ross v. Blake, 578 U.S. 632, 642 (2016). Even optional

administrative remedy procedures must be exhausted, so long as they are "available." See

Johnson v. Thyng, 369 F. App'x 144, 147-48 (1st Cir. 2010). Circumstances in which an

administrative remedy may be considered unavailable include when "it operates as a simple dead

end — with officers unable or consistently unwilling to provide any relief to aggrieved inmates";

when prison officials "thwart inmates from taking advantage of a grievance process through

machination, misrepresentation, or intimidation"; and when "rules are 'so confusing that . . . no

reasonable prisoner can use them.'" Ross, 578 U.S. at 643-44 (citations omitted).

Since the failure to exhaust available remedies is an affirmative defense, see Jones, 549

U.S. at 216, defendants here have the initial burden of showing that the plaintiff failed to exhaust

prison remedies that were generally available. Next, "the burden shifts to the prisoner to come

forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." Albino v. Baca, 747 F.3d 1162, 1172 (2014) (burden-shifting in context of Rule 56 motion practice); accord Tuckel v. Grover, 660 F.3d 1249, 1254 (10th Cir. 2011). Then, this court must address whether Waite has demonstrated any likelihood of success on the merits of his pertinent claims, given the evidence relating to the PLRA exhaustion defense. See, e.g., Anderson v. Prisoner Health Servs., No. 10-cv-15154, 2011 WL 2143514, at *2, 2011 U.S. Dist. LEXIS 57663, at *5 (E.D. Mich. May 31, 2011) (prisoner who failed to exhaust his administrative remedies as required by PLRA failed to show likelihood of success on merits).

Under the NHDOC's administrative procedures, a prisoner seeking a specific religious diet, whose declared religion falls within a recognized religious group that does not otherwise make that diet available, may submit a proposal to the RRC to have that diet offered to members of the prisoner's religious group. See Decl. of Chap. Hoyt (Feb. 2, 2024) ("Hoyt Decl.") ¶ 5 (doc. no. 14-1); see also PPD 672 (doc. no. 14-2). In response to an October 31, 2021, IRS, in which Waite asked to receive the "Kosher/Halal diet," Chaplain Hoyt informed Waite that the Chaplain lacked the authority to make that diet available to Waite since his declared religion was neither Judaism nor Islam. But, he said, he could add Kosher/Halal meals to the diets available to members of the Pagan religious group if Waite followed the RRC proposal process. Hoyt Decl. ¶¶ 6–7 ("'You may pursue getting the Kosher option added to the Pagan list via an RRC Proposal'"); see also Chap. Hoyt Nov. 2, 2021 Resp. to Oct. 31, 2021 IRS (doc. no. 14-4, at 2). When Waite submitted a grievance related to Chaplain Hoyt's response to his IRS, he was informed that "what Chaplain Hoyt provided you for information is correct." Grievance Form Nov. 25, 2021 (doc. no. 1-1 at 34). Waite then sent another IRS to Chaplain Hoyt in December

2021 asking for religious dietary accommodations aligning with what he seeks in this lawsuit, and Chaplain Hoyt responded that Waite could submit a proposal to the RRC. Chap. Hoyt's Dec. 14, 2021 Resp. to Dec. 6, 2021 IRS (doc. no. 11-1, at 58) (Under PPD 672, "those who identify as Pagan/Wicca are authorized [sic] the regular line food, No Pork, Veg with egg, or Veg No Egg diets. You may submit a proposal to the RRC requesting a different diet, if you wish.").

According to PPD 672, the RRC's responsibilities include considering and making recommendations to the NHDOC Commissioner regarding "the introduction of new religious components to the [DOC] religious services program." PPD 672(IV)(A)(2). To request recognition of an additional religious practice for a recognized faith, the prisoner must submit his proposal to the RRC through the facility Chaplain using the prescribed forms. PPD 672(V)(K). Prisoners whose RRC proposals are denied once may seek reconsideration based on new information. See PPD 672(V)(K)(4). If the RRC denies the proposal, the prisoner must follow the NHDOC grievance procedures. PPD 672(V)(K)(4) (citing PPD 313.00).

The clerk's office docketed Waite's Complaint initiating this lawsuit on February 18, 2022. While Waite's RRC proposal to have Witchcraft separately recognized as a religion listed Waite's religious diet requirements, he did not ask the RRC to make that diet available to him if it did not otherwise approve his proposal. He never submitted a stand-alone religious diet proposal for the RRC to consider before filing this lawsuit. See Hoyt Decl. ¶ 9. The weight of the evidence in the preliminary injunction record establishes that Waite did not exhaust the RRC proposal remedy by seeking to add a new religious diet to those available to members of the Pagan religious group. The weight of the evidence also establishes that the process was generally available to prisoners seeking religious diets not already authorized for their declared religions.

The record further shows that the RRC proposal process was "available" to Waite. The process described in PPD 672 is not so opaque or confusing as to be unknowable. Chaplain Hoyt provided clear guidance to Waite in November 2021 and December 2021 about how he could use the process to request a religious diet. Also, Waite had used the RRC Proposal process in May 2021, to request a type of natural prayer oil, and when he was dissatisfied with the outcome, he grieved the RRC's denial of his proposal to the Commissioner, yielding her response. See doc. no. 1-1, at 19-20.

As to whether the RRC proposal process might be a dead end with prison officials "unable" or "consistently unwilling" to grant a remedy, Waite argues, without evidentiary support, that his attempts in 2024 at using the RRC process have been fruitless, that his proposals were "lost" and never discussed in the meetings that happened just twice in 2024, and that a necessary precedent to his obtaining any relief as to his religious diet proposal would have been an NHDOC decision to recognize Wicca or Witchcraft as a religion separate from Paganism, which he attempted to obtain once from the RRC, unsuccessfully. Waite has not shown why the relative infrequency of RRC meetings made the process unavailable to him before he filed this lawsuit, with respect to his religious diet claims. He offers no evidence that the proposals that he thought were "lost" concerned any request for a religious diet. His suggestion that any proposal was lost due to the bad faith of any prison official is both conclusory and speculative and cannot establish that he is likely to succeed on the merits of establishing the unavailability of any administrative remedy.

Moreover, there is no evidentiary support for his argument that he could not obtain any RRC remedy relating to his religious diet until NHBOP recognized Witchcraft as an independent religion. The evidence shows that NHDOC officials, including the defendant Chaplain Hoyt,

have considered Witchcraft a religion that falls under the mantle of the Pagan religious group. There is no evidence disputing the Chaplain's assertion in response to Waite's pertinent IRSs that the RRC could make a new diet suitable for Waite available to the Pagan group if the proposal were approved. In any event, PPD 672 allows for grievances to the Commissioner if RRC proposals are denied, and there is no evidence that the Commissioner is invariably unwilling to override the RRC's denial of a religious diet proposal. Under such circumstances, Waite has not demonstrated that the RRC remedy was a dead end.

A plaintiff's burden in demonstrating a likelihood of success on the merits is not light: "To demonstrate likelihood of success on the merits, plaintiffs must show 'more than mere possibility' of success – rather, they must establish a 'strong likelihood' that they will ultimately prevail." Sindicato Puertorriqueño de Trabajadores, SEIU Loc. 1996 v. Fortuño, 699 F.3d 1, 10 (1st Cir. 2012) (per curiam) (citations omitted). While a more developed record might lead the court to reconsider its preliminary decision in this regard, defendants have shown upon the evidence in the record at this time, that Waite did not, as required by the PLRA, exhaust all available administrative remedies with respect to his religious diet claims (Claims 4(a)-(b)) before filing this lawsuit. And because Claims 4(a)-(b) form the basis of his preliminary injunction motions relating to his religious diet, Waite has failed to meet his burden to show a likelihood that he would succeed on the merits. Cf. Arborjet, 794 F.3d at 173 (""[I]f the moving party cannot demonstrate that he is likely to succeed in his quest, the remaining factors become matters of idle curiosity.'" (citation omitted)). Accordingly, the court denies both of Waite's motions for preliminary relief (doc. nos. 7, 16).

**<u>Conclusion</u>**

For the foregoing reasons, Waite's (first) and (second) motions for a preliminary

injunction (doc. nos. 7, 16) are DENIED.

SO ORDERED.

Samantha D. Elliott
United States District Judge

September 26, 2024

cc:     Richard A. Waite, pro se
        Nathan W. Kenison-Marvin, Esq.