UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Richard A. Waite

      v.                                                  Civil No. 22-cv-071-SE-AJ

Chaplain D. Hoyt et al.

## REPORT AND RECOMMENDATION

New Hampshire Department of Corrections ("NHDOC") prisoner Richard A. Waite filed this action against the Northern New Hampshire Correctional Facility ("NCF") Warden Corey Riendeau, the NHDOC Commissioner, NCF Chaplain Dana Hoyt, and other members of the NHDOC Religious Review Committee. Waite's claims include those identified by this court as Claims 7(a)-(c), asserting violations of the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1(a), and the First Amendment Free Exercise Clause and Establishment Clause, relating to Waite's practice of the religion called Witchcraft or Wicca. Before the court is defendants' Rule 12(c) motion for judgment on the pleadings as to Claim 7(a)-(c) (Doc. No. 42). Plaintiff objects to defendants' motion (Doc. No. 49).

## LEGAL STANDARD

A "Rule 12(c) motion for judgment on the pleadings is 'ordinarily accorded much the same treatment'" as a Rule 12(b)(6) motion to dismiss a complaint for failure to state a claim. Ortolano v. City of Nashua, 680 F. Supp. 3d 70, 76 (D.N.H. 2023) (quoting Aponte-Torres v. Univ. of P.R., 445 F.3d 50, 54 (1st Cir. 2006)). To determine whether the plaintiff has stated a claim upon which relief can be granted, the court strips away the legal conclusions in the complaint, accepts the factual allegations as true, construes reasonable inferences in plaintiff's favor, and then determines whether the factual allegations in the complaint set forth a plausible claim upon which relief may be granted. Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 71, 75

(1st Cir. 2014). "These facts may be supplemented by reference to documents fairly incorporated in the pleadings and facts susceptible to judicial notice." Great Lakes Ins. SE v. Andersson, 66 F.4th 20, 22 (1st Cir. 2023) (internal quotation marks and citations omitted). Since Waite is pro se, the court construes his complaint liberally. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam).

## BACKGROUND

The following facts are derived from Waite's pleadings, except as otherwise noted. The NHDOC recognizes a number of separate religions or groups of religions practiced by NHDOC prisoners. Each prisoner may declare only one religion at any given time. Waite has declared his religion to be Witchcraft or Wicca.

Waite's religion is recorded as "Wicca" in the NHDOC's system of prison records known as "CORIS." The NHDOC deems Wicca or Witchcraft to be part of the "Pagan/NeoPagan" religious "umbrella" group, for the purpose of NHDOC religious programming. The Pagan/NeoPagan group is listed as one of the "recognized" religions in the official list maintained by the NHDOC chaplains. Neither Wicca nor Witchcraft is separately listed as a recognized religion. See Nov. 10, 2021 Resp. of Chap. D. Hoyt to Nov. 3, 2021 Inmate Request Slip ("IRS") (Doc. No. 11-1 at 56).

Waite asked the NHDOC Chaplain how to obtain separate recognition of Witchcraft, so that it would have a recognized identity independent of other faiths grouped as "Pagan/NeoPagan." NHDOC Chaplain Hoyt stated in response to Waite's inquiry that Waite could submit a proposal to the NHDOC Religious Review Committee ("RRC") for separate recognition of Witchcraft. Id. Waite submitted a proposal to the RRC in late November 2021, seeking to have Witchcraft removed from the larger Pagan/NeoPagan group, asking for separate,

stand-alone recognition of Witchcraft.  The RRC denied Waite's proposal for separate recognition of Witchcraft in February 2022, keeping it under the Pagan/NeoPagan mantle.  See Doc. No. 11-1 at 4.

Waite grieved the denial of his Witchcraft recognition proposal.  Waite stated in his grievances and/or in his underlying RRC proposal that not all Pagans are witches; that the religious apparel and property needs for witches and other Pagans are not identical; that the prisoner-led Pagan services at NCF did not include the same rites and rituals that his religious practice requires; and that the Pagan services at NCF occur less often than his religion requires.  Waite further argued that other faiths like Asatru previously grouped as Pagan religions had obtained separate recognition.  Waite's grievances were denied.  See Doc. No. 11-1 at 1; Doc. No. 19-1 at 5.

Waite filed this lawsuit in 2022 claiming violations of his civil rights.  Some of Waite's claims were dismissed following the court's preliminary review of his pleadings.  See Sept. 3, 2024 Order (Doc. No. 29).  His surviving claims include those identified as Claims 7(a)-(c).  This court summarized Claims 7(a)-(c) as follows:  "Defendants have violated plaintiff's rights under (a) the First Amendment Free Exercise Clause, (b) RLUIPA [42 U.S.C. § 2000cc-1(a)], and (c) the First Amendment Establishment Clause by failing to recognize Witchcraft as a religion that is separate and distinct from Paganism."  July 23, 2024 Superseding Endorsed Order.  Defendants have moved for judgment on the pleadings only as to Claims 7(a)-(c).

## DISCUSSION

I.    RLUIPA (Claim 7(b))

RLUIPA provides that "[no] government shall impose a substantial burden on the religious exercise of a [prisoner] . . . even if the burden results from a rule of general

3

applicability," unless the government demonstrates that the burden is "in furtherance of a compelling governmental interest" and is "the least restrictive means of furthering that . . . interest." 42 U.S.C. § 2000cc-1(a). To obtain relief on his RLUIPA claims, Waite must show that the prison has substantially burdened his religious practice by the NHDOC policy or practice of considering Witchcraft to be part of the Pagan religious group and not giving it the status of an independently "recognized" religion. Then, if Waite successfully establishes those matters, the government may avoid liability by showing that the policy imposing the burden furthers a compelling governmental interest, and that the policy is the least restrictive means of achieving that interest. Ramirez v. Collier, 595 U.S. 411, 425 (2022).

A substantial burden for purposes of RUIPA exists "'[w]here the state conditions receipt of an important benefit upon conduct proscribed by a religious faith, or where it denies such a benefit because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs,'" Perrier-Bilbo v. United States, 954 F.3d 413, 431 (1st Cir. 2020) (citation omitted). A "[s]ubstantial burden requires something more than an incidental effect on religious exercise" or inconvenience. Signs for Jesus v. Town of Pembroke, 977 F.3d 93, 111 (1st Cir. 2020) (internal quotation marks and citation omitted). A prison's failure to offer regular congregate worship services required by a prisoner's religious practices can amount to a substantial burden. See, e.g., Crawford v. Clarke, 578 F.3d 39, 44 (1st Cir. 2009) (plaintiffs had shown substantial burden on their religious practice of congregate worship because they were prohibited from participating in any weekly, group services).

Waite has alleged that not having separate recognition for Witchcraft has burdened his ability to obtain a religious diet, as well as his ability to attend religious services that satisfy the frequency and ritual requirements of his religion. In particular, in his RRC proposal requesting

4

separate recognition, he pointed to the difference between the number of group services his religion requires (Esbat services at least once and up to five times per lunar month, and Sabbats six or eight times per solar year), in contrast to the lower number of services offered to Pagans at NCF; the differences between his Witchcraft ritual requirements and the type of rituals in the prisoner-led Pagan services at NCF; and his religious dietary needs for food treated with reverence and the lack of any similar religious diet offered to the Pagan group.  See generally RRC Proposal, Nov. 24, 2021, Doc. No. 11-1 at 5; see also Doc. No. 11-1 at 56; Doc. No. 20 at 6.  Waite also alleges that since Witchcraft is not an officially recognized religion, he cannot successfully petition the RRC to add a new religious diet to the prison's menu for his religion.

Waite's allegations regarding his lack of access to the type and number of congregate services his religion requires, the existence of a prison policy concerning the availability of congregate worship at least one time per month for "recognized" religions,[1] and his alleged inability to obtain a religious diet state claims that the NHDOC's failure to officially recognize Witchcraft as a separate religion burdens Waite's religious exercises of congregate worship and his religious dietary restrictions.  Waite's allegations suggest that the burden is substantial, not inconsequential.  Accordingly, the district judge should thus deny the motion for judgment on the pleadings as to Claim 7(b).

---

[1] NHDOC Policy and Procedure Directive ("PPD") 672, concerning religious programming, see Doc. No. 14-2, states as follows:

> Once recognized by the NHDOC, the religious group will be allowed to meet together at least once a month to pursue congregate practice/worship, subject to the restrictions of their custody level, security concerns and the availability of NHDOC staff and volunteers to be present during the religious meeting.

PPD 672(IV)(A)(2) (Doc. No. 14-2).

II.      Free Exercise Clause (Claim 7(a))

"'In a claim arising under the First Amendment's Free Exercise Clause, an inmate must first establish that a challenged policy restricts the inmate's free exercise of a sincerely held religious belief.'" Barnett v. Comm'r, N.H. Dep't of Corr., No. 98-305-JD, 2000 DNH 101, 2000 WL 1499490, at *2, 2000 U.S. Dist. LEXIS 6190, at *5 (D.N.H. Apr. 26, 2000) (quoting Brown-El v. Harris, 26 F.3d 68, 69 (8th Cir. 1994)). In the prison context, the right to free exercise of religion may be curtailed. Prisons may adopt restrictions that impinge on First Amendment free exercise rights, if those restrictions are reasonably related to legitimate government objectives. See Bell v. Wolfish, 441 U.S. 520, 538-40 & n.20 (1979). Courts evaluating such restrictions must do so with due deference to the professional expertise and judgment of corrections officials as to issues of institutional safety, security, and order. See Pell v. Procunier, 417 U.S. 817, 827 (1974).

RLUIPA is more protective of prisoner religious practices than the Free Exercise Clause. Kuperman v. Wrenn, 645 F.3d 69, 79 (1st Cir. 2011). Proving a substantial burden for purposes of RLUIPA suffices to "trigger the Free Exercise Clause." Fuqua v. Raak, 120 F.4th 1346, 1353 (9th Cir. 2024).

Waite alleges facts sufficient to show that the NHDOC's failure to recognize Witchcraft is a cause of his inability to obtain his own religious diet and to attend the congregate services his religion requires. Waite's pleadings do not set forth facts indicating that there is a legitimate purpose promoted by denying official recognition to his religion. His pleadings state Free Exercise Clause claims upon which relief can be granted. Accordingly, the district judge should deny the Rule 12(c) motion as to Claim 7(a).

III.     Establishment Clause (Claim 7(c))

The Establishment Clause of the First Amendment prohibits any "law respecting an establishment of religion." U.S. Const. Amend. I.

> The clearest command of the Establishment Clause" is that the government may not "officially prefe[r]" one religious denomination over another. This principle of denominational neutrality bars States from passing laws that "'aid or oppose'" particular religions, or interfere in the "competition between sects." . . . Government actions that favor certain religions, the Court has warned, convey to members of other faiths that "'they are outsiders, not full members of the political community.'"

Cath. Charities Bureau, Inc. v. Wis. Lab. & Indus. Review Comm'n, 605 U.S. 238, 247-48 (2025). In the prison context, the Supreme Court has concluded that RLUIPA itself does not violate the Establishment Clause because it confers "no privileged status on any particular religious sect, and single[s] out no bona fide faith for disadvantageous treatment."[2] Cutter v. Wilkinson, 544 U.S. 709, 724 (2005).

In the Establishment Clause claim this court identified as Claim 7(c), Waite maintains that the term, "Pagan," attached to his religion, is a "derogatory word," carrying a historical connotation that demeans his religion. His pleadings, construed liberally, highlight the ability of members of recognized religions to have access to religion-specific feasts and monthly congregate religious services, and to ask for and potentially receive new religious diets. He

---

[2] It remains an open question in the First Circuit as to whether prisoners' Establishment Clause claims will fail if the prison policy at issue is reasonably related to a legitimate penological interest. See Lumumba v. Kiser, 116 F.4th 269, 279 n.6 (4th Cir. 2024) (Supreme Court has never addressed whether and how Turner might apply to prisoners' Establishment Clause claims (citing Turner v. Safley, 482 U.S. 78, 89-91 (1987)); Czekalski v. Hanks, No. 18-cv-592-PB, 2020 DNH 212, 2020 WL 7231358, at *15, 2020 U.S. Dist. LEXIS 231179, at *43 (D.N.H. Dec. 8, 2020) (declining "to stake out a position on the applicability of Turner" to Establishment Clause claims). This court need not express any opinion on that issue at this time, in ruling on the Rule 12(c) motion, as the facts alleged in the complaint do not suggest the existence of any legitimate penological interest served by denying separate recognition to plaintiff's religion.

further alleges that the NHDOC's official recognition of a religion, or lack thereof, affects what prisoners who practice Witchcraft as a religion can ask for and potentially receive from prison officials. Waite's allegations suggest that officially-recognized religions are afforded privileged status denied to his religion because of its lack of separate recognition. Claim 7(c) states an Establishment Clause claim upon which relief can be granted. The district judge should thus deny the Rule 12(c) motion as to Claim 7(c).

## CONCLUSION

For the foregoing reasons, the district judge should deny defendants' motion for judgment on the pleadings (Doc. No. 42). Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice. See Fed. R. Civ. P. 72(b)(2). The fourteen-day period may be extended upon motion. Failure to file objections within the specified time waives the right to appeal the district court's order. See Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016).

_____
Andrea K. Johnstone
United States Magistrate Judge

August 11, 2025

cc:   Richard A. Waite, pro se
      Nathan W. Kenison-Marvin, Esq.
      Michael P. DeGrandis, Esq.

8